JONAS FRY v. GUSTAVE KAESSNER.

FILED APRIL 21, 1896.    No. 6492.

1. **Intoxicating Liquors: LICENSE FEES: PAYMENT.** There exists no authority in this state to grant license to sell intoxicating liquors without payment in full of the fee prescribed by law, and a license issued without such payment of the fee is invalid.

2. **Malicious Prosecution.** A person may institute a criminal prosecution when the apparent facts are sufficient to induce a discreet and prudent person to believe that the party to be accused has committed the crime with which he is to be charged, and although the accused may be adjudged innocent, the complainant will not be liable in an action for malicious prosecution.

3. **Arrest Without Warrant.** "Every sheriff, deputy sheriff, constable, marshal, or deputy marshal, watchman, or police officer shall arrest and detain any person found violating any law of this state, or any legal ordinance of any city or incorporated village, until a legal warrant can be obtained." (See Criminal Code, sec. 283.)

4. **Action to Recover Damages for Malicious Prosecution: VERDICT FOR PLAINTIFF.** Evidence examined, and *held* insufficient to support the verdict.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J.

*William S. Poppleton,* for plaintiff in error.

*James W. Carr, contra.*

HARRISON, J.

In this action Gustave Kaessner sought to recover damages in the sum of $20,000 alleged to have been suffered by him as the consequences of his malicious prosecution by Jonas Fry, the marshal of the village of Elkhorn, and a number of others, who were made defendants, but as to whom no more specific reference need be made, as, during the trial, a nonsuit of plaintiff's cause of action was entered as to all of them. A trial of the issues was had, and the plaintiff in the district court was accorded a verdict and judgment against Jonas Fry in the sum of $350. Error proceedings have been prosecuted to this court on behalf of Fry.

During a portion of the year 1890 one August C. Uhtof was running a saloon, or was engaged in the business of selling liquor, in a building or room which belonged to Gustave Kaessner, situated in the village of Elkhorn. As authority to engage in such business, Uhtof had obtained from the village board what was issued and purported to be a license for his conducting such business one year, commencing January 20, 1890, and terminating January 20, 1891, for which he was to pay quarterly in advance. He had paid on January 19, 1890, $125, April 19, 1890, $125, and no more. Differences and trouble arose between Uhtof and the village board, probably more especially in regard to an occupation tax, which the board demanded of him and he refused. The board took counsel and were advised by an attorney, after he had been fully informed upon and fully investigated the subject, that Uhtof's supposed license to sell liquors was void, and that he was liable to arrest or that his place could be closed; that the latter was the proper and the better course to pursue, and the one favored by counsel.

Of all this Fry, the marshal, was informed by the board, or some of its members, and furthermore, he had an interview with the attorney, in which he was told the same, in substance. The board, at one of its meetings, made an order by which it purported to revoke Uhtof's license, and in the endeavor to have him stop selling liquors there were some suits at law commenced and prosecuted. But to come to the occurrences with which we are more particularly concerned, because from them sprung the case at bar. On the 7th of September, 1890, in the evening, Uhtof was arrested, and we will say here that at the date just alluded to his license was of no force or effect, was void, if it ever had been of any validity, for the reason, if none other, that he had never paid the license fee in full. He had not even paid the installments. The license is void if the fee is not paid in full. (*Zielke v. State*, 42 Neb., 750.) It appears that after Uhtof's arrest he was taken to the village jail and kept there during the night. Kaessner, whose place of business was near Uhtof's saloon, when on his way to business on the morning of the 18th of September, 1890, noticed that Uhtof's saloon was not open and went into some other room or rooms of the same building, where it appears Uhtof and his family lived, and questioned some members of the family in regard to the whereabouts of Uhtof. While he was there Uhtof came in, and during a conversation they then had, Uhtof asked Kaessner to tend bar during the day, as he, Uhtof, could not be there to do so, but must attend his trial or hearing to be held then. To this Kaessner assented and was given the key to the saloon, and opened it and prepared for customers, and it was in the testimony that it was not long until customers came and he served them, selling them some beer, Jonas Fry testified on this point as follows:

Q. You may state what the facts were, as known to you, regarding the actual selling of liquor by Gustave Kaessner here on the morning of his arrest, September 18.

A. He was.

Q. How do you know he was selling liquor?

A. I saw him.

The marshal, between 10 and 11 o'clock of that morning, went to the saloon, without a warrant, and after some resistance from Kaessner and also from Uhtof, who was then in the saloon, and after calling in help, finally arrested Kaessner as he stood behind the bar and took him to the jail and put him in and left him there until he (the officer) went to the residence of a justice of the peace, about three-quarters of a mile distant, and with the justice returned to the village. A complaint was prepared and verified by the marshal, charging Kaessner with selling intoxicating liquors without first having obtained a license authorizing such selling by him, and a warrant was issued. At about 1 o'clock in the afternoon Kaessner was taken before the justice of the peace, David Smith, to have his hearing and applied for a change of venue, and the case was transferred to be heard before Ed A. Shaw, a justice of the peace in the city of Omaha. Fry took Kaessner to Omaha and kept him in a hotel over night, and the next morning took him to the county jail and left him there, where he was kept something more than a day, when he furnished bond and was released. On October 15, 1890, Kaessner had a hearing and was discharged.

One proposition raised by the assignments of error, and mainly depended upon by counsel for plaintiff in error, is that the verdict was not sustained by sufficient evidence. The testimony discloses that Uhtof was conducting the saloon business in the village of Elkhorn without any valid license or authority so to do; also, that Kaessner, on the morning of the 18th of September, 1890, was "tending bar or running the saloon for Uhtof, and sold intoxicating liquor at that time and place, and further, that Jonas Fry was the marshal of the village; that he knew all the facts in regard to Uhtof's carrying on the business without legal right to do so; that Fry saw Kaessner in the saloon selling liquors on the morn-

ing the arrest was made, and he was also informed by other persons of sales of intoxicants made there by Kaessner on that morning." It has been said "Probable cause [for a criminal prosecution] is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing that the accused was guilty" of the offense named. (*Chicago, B. & Q. R. Co. v. Kriski*, 30 Neb., 215; *Diers v. Mallon*, 46 Neb., 121.) The prosecution may act upon appearances. If the apparent facts are such that a discreet and prudent person would be led to the belief that the accused had committed a crime, he will not be liable in this action, although it may turn out that the accused was innocent. Such a case must be presented as would induce a sober, sensible, and discreet person to act upon it. (Cooley, Torts, note 2, p. 182.) Unquestionably, on the facts and circumstances as developed in the testimony in this case with reference to the illegal sales of intoxicating liquors by Kaessner the morning of his arrest for such acts, Fry, having knowledge of them, was warranted in making the complaint and instituting the prosecution. (*Chicago, B. & Q. R. Co. v. Kriski, supra.*) In this connection the question of the arrest of Kaessner without a warrant and his detention until one could be obtained arises. It is provided in section 283 of the Criminal Code: "Every sheriff, deputy sheriff, constable, marshal or deputy marshal, watchman, or police officer shall arrest and detain any person found violating any law of this state or any legal ordinance of any city or incorporated village, until a legal warrant can be obtained." The officer in this case had been informed that Kaessner was selling liquor in Uhtof's saloon, for the running of which the officer knew there was no valid license. He saw the accused sell liquor that morning and in that place, and when he went to make the arrest Kaessner was behind the bar, with the liquors at hand and ready for business, although the evidence did not show that he was, just at the immediate instant of his arrest, dealing out or passing liquor over the

bar.   Doubtless the officer was justified in making the arrest as he did without a warrant, and detaining Kaessner until it could be obtained, but the better and the proper course would have been to have filed a complaint and obtained a warrant before making the arrest. Kaessner was a business man and citizen of the village, and it was reasonable to suppose that he would not flee to avoid the arrest before a warrant could be issued.   There was no necessity for his immediate apprehension.   It was not claimed that he was committing a breach of the peace or creating disorder.   "But when the offense committed is a misdemeanor only, then even an officer should not ordinarily arrest without a warrant, unless the offender is found by the officer himself in the act.   The reason is obvious.   In cases of misdemeanor there is not that probability that the offender will abscond,   *   *   *   as in cases of felony." (Warren, Ohio Criminal Law, 48.) The verdict rendered was not supported by the evidence, hence the judgment of the district court must be reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.