| 66 | 535 |
| 77 | 297 |

## HENCKE *v.* STANDIFORD.

· Opinion delivered June 17, 1899.

1. CONTRACT—PUBLIC POLICY.—Where the ordinance of an incorporated town provided that, before the recorder should issue any license to sell liquors, the applicant therefor should file with him the receipt of the treasurer for the amount of money required to be paid for such license, a license issued before such sum is paid is void, and a note given in payment of such license fee is without consideration. (Page 537.)

2. EVIDENCE—PROOF OF TOWN ORDINANCE.—It is not admissible to prove by parol that a town council met and decided to allow a note to be taken in payment of a fee for a liquor license. (Page 539.)

Appeal from Randolph Circuit Court. .

· JOHN B. McCALEB, Judge.

### STATEMENT BY THE COURT.

This suit was by the appellant as treasurer of the incorporated town of Pocahontas on the following instrument:

"$500.   On or before November 15, 1895, we or either of us promise to pay John Hencke, as treasurer of the incorporated town of Pocahontas, Ark., or successor in office, five hundred dollars, value received, to bear interest from date until paid at the rate of ten per cent. per annum."   Signed by the appellees.

The answer admitted the execution of the note, but denied liability, upon the ground "that the note was executed for dramshop or saloon license issued to Sam Standiford, authorizing him to retail liquors within the incorporated town of Pocahontas, Ark., for and during the year 1895, and that said action in taking said note was not authorized by any law of the State of Arkansas, nor by any ordinance, by-law, or resolution of the incorporated town."

The ordinance of the town in evidence provided, in the first section, that it should be unlawful to sell certain designated liquors within the corporate limits without first procuring a license authorizing such privilege.   Section two directed and authorized the recorder of the town to issue the license, when

applied for by any person over 21 years of age, which license should continue in force for the period of one year. Section three is as follows: "That, before the recorder shall issue any license as provided in the foregoing section, the applicant therefor shall file with him the receipt of the treasurer of said incorporated town for the amount of money hereinafter required to be paid for such license." Section four provides: "Any person or persons desiring to obtain license as hereinbefore provided shall first pay into the treasury of the incorporated town of Pocahontas the sum of $500, and the further sum of two dollars for the fees for issuing each license," etc. Section 5 is as follows: "Any person who shall sell, either for himself or for another, or be interested in the sale of, any ardent, vinous, malt or fermented liquors, or any compound of preparation thereof commonly called tonics, or bitters, or medicated liquors, without the owners thereof having previously procured a license authorizing the sale thereof, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined in any sum not less than ten nor more than twenty-five dollars, and each day such person shall be so engaged shall constitute a separate offense."

There was testimony to show that the makers of the note or the licensees represented to the treasurer that arrangements had been made with the town council to accept the note in suit and to grant license for the year 1895. They asked the treasurer to give them a receipt for the license. He refused to do this, but did give them a receipt for the note. The receipt for the note was presented to the recorder of the town, and he issued license to Sam Standiford to keep a dramshop in Pocahontas for the year 1895. An effort was made to show by the mayor of the town that the town council had met and decided to allow Sam Standiford to give the note in controversy for his license. It was shown that no record was made of the meeting, and that the resolution was not passed like an ordinance was required to be passed. The court refused to allow the testimony of such alleged resolution of the council, and exceptions were duly saved.

The court found that "John Hencke had no authority from the common council of the said incorporated town of Pocahontas, Ark., to receive said note, nor the recorder of said

town to issue license on same, and that therefore said note is void as against public policy.

*P. H. Crenshaw*, for appellant.

Appellees are estopped to deny the authority of the municipality to grant them the license for the note. 36 Ark. 577; *ib*. 96: 60 Ark. 497; 33 Ark. 465. Taking a note as payment of a pre-existing obligation, when so agreed, is payment. 14 Am. Law Reg. (N. S.) 59. In addition to this, if, by their false representations, they induced the town treasurer to become liable for the amount, they are liable to him personally as guarantors on the note. Nor was the taking of the note contrary to public policy.

*Witt & Schoonover, S. A. D. Eaton* and *J. T. Lomax*, for appellees.

The note given in this case was void, the contract on which it was founded being against public policy. Greenhood, Public Policy, 306; 30 Miss. 414; 51 Miss. 196; 47 Mich. 228; 11 Am. & Eng. Enc. Law, 670, 671. A promise to pay is not the payment contemplated by the ordinance. 36 Ark. 576; 60 N. W. 1010; 66 N. W. 1126. No one can estop himself from taking advantage of the defense that a contract is contrary to public policy. 47 Ark. 354; Greenhood, Public Policy, 115.

WOOD, J., (after stating the facts.) Was the finding of the court correct? Under section three of the ordinance the applicant for license had to file with the recorder the receipt of the treasurer of the town for the amount of money required to be paid for the license before the recorder was authorized to issue the license, and under section four the applicant for license had to first pay into the treasury of the town the sum of $500.

It will thus be seen that the issuance of the license was illegal. The license itself was void. It conferred no rights and no protection to the applicant against the penalties of a violated law, and of course imposed upon him no obligation to pay the note which he had given for such license. The note was wholly without consideration and void. The supreme court of Nebraska, in discussing a question similar to this, said:

"There was still no authority for the issuing of the license without payment in full of the license fee. The payment into the village treasury of the sum of $500 was just as essential to a valid license as the petition or notice. The proposition that the several municipal bodies can, under the provisions of our statute, license the sale of liquors on the credit of a licensee is not entitled to serious consideration. And a license so issued is not voidable merely, but void." *Zielke* v. *State*, 60 N. W. Rep. 1010. The same may be said of the license for which the note was given under the ordinance set out above. See also *Fry* v. *Kaessner*, 66 N. W. Rep. 1126. An officer having charge of the collection of fees for liquor license has no authority to receive anything in payment but legal tender money, or such money as passes current at the time. Black, Int. Liquors, § 184, and authorities cited. Fees or charges for liquor licenses are not "debts," in the ordinary acceptation of that term. The only methods for the collection of such fees are those provided by statute; and if the statute does not provide for their collection by civil action, no such action can be maintained. Especially could this not be done in the face of an ordinance which provides for the payment of the license fee before the license shall issue, and prescribes the amount of the liabilities to the town, county or state in case of a sale without license, which is collectible by criminal procedure. Black on Int. Liq. § 185, and authorities cited.

"The conditions of taxation were not imposed for the primary purpose of increasing the revenues of municipalities that receive the tax. They are imposed for motives of public policy, to restrain the sales of a dangerous commodity, and confine them in the hands of responsible and law-abiding parties, who can make good such claims as are laid upon them. The payment of the money to the municipality is resorted to as an equitable distribution, somewhat proportioned to the mischief likely to arise from the traffic. But no community has the right to determine for itself whether this money shall be collected. The duty of the officer is absolute, and made so because the community is not to be damaged by the indisposition of its legal guardians to protect it. The policy of the law cannot be lawfully thwarted. The law would be a dead letter in those places needing its en-

forcement, if the local authorities could thus defeat its opera-
tion." The above quotation is taken from the decision of
the supreme court of Michigan in a case where a sheriff took a
note for liquor license, under a statute making it a misdemeanor
for one to sell liquor until he had paid to the county treasurer
of the proper county the full amount of the tax, and authoriz-
ing the treasurer, in case of non-payment, to issue his warrant
for the amount to the sheriff, who was authorized to collect
same by levying on certain property, etc. "The arrangement,"
said the court, "was illegal, and the note void." *Doran* v.
*Phillips*, 47 Mich. 228; *Baldwin* v. *Scoggin*, 15 Ark. 427; *Shor-
man* v. *Eakin*, 47 Ark. 351. So say we. *Newsom* v. *Thighen*,
30 Miss. 414; *McWilliams* v. *Phillips*, 51 Miss. 196; Green-
hood, Public Policy, pp. 306, 310.

Second. The court did not err in excluding the testimony
of a certain witness going to show that the town council met
and decided to allow Sam Standiford to give the note in con-
troversy for his license.

An ordinance of the town could not be proved in this way,
and nothing short of an ordinance would have been sufficient to
authorize the taking of the note, and it is shown that no such
ordinance was passed.

Affirm the judgment.