## RISTINE v. CLEMENTS ET AL.

[No. 4,602.  Filed April 2, 1903.  Rehearing denied June 24, 1903.]

INTOXICATING LIQUORS.—*License.*—*Note Given in Payment.*—Where a town ordinance required the payment of the license fee in advance of the issuing of a license to sell intoxicating liquors, a note given in payment for such license is without consideration, and void. *pp. 339-349.*

MORTGAGES.—*False Representations Made to Wife.*—Where a wife was induced to sign a mortgage upon false representations that money to be furnished by the mortgagee would pay all the encumbrances upon the land, and that such mortgage would be the only mortgage remaining thereon, the mortgage was void as to her. *pp. 349, 350.*

From Montgomery Circuit Court; *Jere West,* Judge.

Action by Dora Clements against Hosea Ristine and others. From a judgment for plaintiff, defendant Ristine appeals, and appellee Clements assigns cross-errors. *Reversed on cross-errors.*

*Benjamin Crane* and *A. B. Anderson,* for appellant.

*M. M. Bachelder, C. H. Jones* and *J. B. Murphy,* for appellees.

ROBINSON, J.—This cause was transferred from the Supreme Court under the act of March 12, 1901.

Suit by appellee to recover one-third of the proceeds of the sale of certain land owned by her husband, and to enjoin the sheriff from paying such money to certain judgment creditors of the husband.

The court found the facts as follows: Dora and Robert Clements are husband and wife, Robert Clements being a householder having property of all descriptions worth less than $600. In 1888 he became the owner of certain real estate particularly described, and borrowed from the Ladoga Building Association $1,400, and to secure the same he and his wife executed mortgages on the land. In 1895 the building association filed its complaint against the mortgagors and George Green, William Hostetter, John Maloney, William J. Davis, and Thomas Rankin, and obtained judgment against Clements for $541.11 and a foreclosure of the mortgage against all the defendants. It was averred in that complaint: That the liens of all the defendants other than Clements were inferior to the building association mortgage, and it was so adjudged in the decree; that the land was ordered sold by the sheriff, and he was directed to apply the proceeds from the sale (1) to the payment of costs, (2) to the payment of the amount due the building association, and (3) to the payment of the amount due Davis and Rankin on their judgments, the overplus, if any, to be paid to the clerk of the court for the use of the parties lawfully authorized to receive the same; that the sheriff,

on July 25, 1896, sold the real estate to Hosea H. Ristine for the sum of $1,200, which was its reasonable value, and which he received from Ristine, and after paying the building association the amount due on its mortgage and all costs there yet remained in his hands $562.16, which amount the sheriff has never accounted for, but retained the same up to the time of his death in 1901; that John L. Davis is now the executor of his estate, and on October 16, 1901, paid the money to the clerk of the court, to be paid out as the court might order; that no one redeemed from this sale, and on the 29th day of July, 1897, Ristine received a deed for the same, and has ever since been the owner; that in the foreclosure proceedings no averment is made in the complaint against Dora Clements, except that she executed the mortgage with her husband; that no averment is made against Hostetter or Green, except that they have mortgages upon the real estate which are inferior to the plaintiff's, and that no averment is made against Maloney, Davis, or Rankin, except that they have judgments against Robert Clements, and that they are liens inferior to plaintiff's; that the prayer of the plaintiff was for judgment against Robert Clements in a named sum, and a foreclosure of its mortgage against all the defendants, and for the sale of the land free from the claims of the defendants; that all of the defendants were regularly served with summons; that Robert and Dora Clements, Green, and Hostetter each made default; that Rankin, Davis, and Maloney filed answers, setting up their several judgments, and asked that their interests be protected, and if the mortgaged premises should sell for more than enough to pay the mortgages, that the excess be paid to them; that on the day of, and just prior to the time of, the sale of the land Robert Clements presented to the sheriff his schedule, claiming his exemption as provided by law, and demanding that the sheriff set over to him as exempt all the money that might remain arising from the sale after the payment of the building associa-

Ristine v. Clements.

tion mortgage, but that the sheriff refused to pay the same or any part thereof, and refused to accept his schedule; that Dora Clements at the same time demanded of the sheriff that he turn over to her the one-third part arising from such sale, if that much remained after the payment of the building association mortgage, and that if that amount did not remain, that the part that did remain be turned over to her as the wife of Robert Clements, on account of her interest as such wife in the lands, which the sheriff refused to do, and on the day of the sale she brought this suit to obtain one-third of the proceeds of such sale, and at the time of filing her suit she obtained a restraining order enjoining the payment of the money as in the decree ordered, and the executor of the sheriff still holds the same to abide the result of this suit; that in May, 1891, Hartman and Snyder obtained a judgment against Clements; that they were not made parties to the foreclosure suit, and that Ristine paid to them the amount of their judgment, and such judgment was thereupon satisfied; that in April, 1895, Davis and Rankin obtained a judgment against Robert Clements upon a contract for $921, which has never been paid, but which is still in force and effect. In 1893 Robert Clements was engaged in the sale of intoxicating liquor, and was indicted and convicted for violations of the law and fined, amounting in fines and costs to $240.20, and was committed to jail until such judgments were paid or replevied; that these judgments were replevied by one Isaac Clements, and that Robert Clements has never paid any part of the same, except as hereinafter set forth. In June, 1895, Clements executed his note to Hostetter for $160, and to secure the same Clements and wife executed a mortgage on the land, and no part of the note and mortgage has ever been paid or satisfied; that this note and mortgage were executed under the following conditions: In June, 1895, Robert Clements was engaged in the sale of intoxicating liquors in the town of Ladoga, and had, from the 1st

day of March, 1895, been selling and carrying on such business without a license from the town, and the town board had previous thereto often demanded of him that he take out a license and pay the fee therefor, which they claimed to be $150; that previous to June, 1895, the matter had. been considered by the town board, and they were instructed by their attorney that it was doubtful whether they could collect any license fee, and doubtful if they could convict Clements for the violation of any ordinance; that the attorney was thereupon instructed to collect such fee or in some way secure the same; that the attorney informed Clements and his wife that he would prosecute Clements for a violation of the ordinance if the fee was not paid, and, that if they could not raise the money, that Hostetter, the town clerk, would furnish the money and pay for the license, and the same would be issued to Clements and dated back to the 1st day of March, 1895, if Clements would execute his note to Hostetter for $160, which would be $150 furnished by Hostetter for the license and $10 for the attorney's services.

The court further found: That the town of Ladoga did not intend to, and did not believe that it could, collect the license fee by law, or prosecute Clements for a violation of the ordinance, and that Hostetter had never at any time agreed to furnish the $150, or any part thereof; that the representations made by the town attorney were not believed by him to be true, at the time they were made, and were made for the purpose of inducing Robert Clements to execute his note, and to induce Robert and Dora Clements to execute the mortgage; that the Clements believed these statements to be true, and on account of the same executed the note and mortgage to Hostetter; that the town attorney, after he procured the note and mortgage, reported to the town board what he had done, and they ratified his actions, and authorized the town clerk, the payee named in the note and mortgage, to issue to Clements a license for one year,

dating the same back to the 1st day of March, 1895, and Hostetter, as such clerk, was instructed to accept the note and mortgage in payment of the license fee, which he did as the property of the town of Ladoga; that Hostetter did not furnish any money upon the note and mortgage, and never paid any consideration for the same, and that the only consideration which was given for the note and mortgage was the license issued by the town to Clements and the services performed by the town attorney; that it was agreed that Hostetter should take the note and mortgage, and hold them for the use and benefit of the town, but the town was instructed by its attorney that if Clements should learn that Hostetter had not advanced the $150 in payment of the license fee, that he could, and would probably, defeat the note and mortgage, and that it was best that no record be made of their proceedings in the matter, and no record ever was made; that when this note and mortgage were executed there was in force a town ordinance concerning liquor licenses from the town board, and requiring the payment of $100 as a license fee; that Clements, on the 1st day of March, 1895, obtained a county license, and he continued to sell within the town up to the 1st day of March, 1896, and for sometime thereafter; that in October, 1895, having failed to pay the judgments against him in favor of the State, executions were issued and delivered to the sheriff, who was threatening to arrest Clements; that at that time he borrowed from Green the sum of $1,000, Clements pretending to give to Green a list of all his indebtedness, which was a correct list except the judgment for $921 in favor of Davis and Rankin, and Green was at the time ignorant of the existence of this judgment, Green believing that the amount of the encumbrances on the land included the building association mortgages, the judgments in favor of the State, and the mortgage to Hostetter, and that when these were paid off, and a mortgage by Robert Clements and his wife would be a first lien on the land, he drew his check for

$1,000, delivered it to his agent, who deposited it in a bank; that Dora Clements up to that time had not agreed to sign the mortgage, but being assured by the loan agent, who was loaning the money for Green, that the $1,000 would pay off all the liens against the land, she agreed to and did sign and execute the mortgage, and that she never received any consideration for the mortgage, and never received any part of the $1,000; that the agent of Green thereupon executed a check to the building association for the amount due upon its mortgages, and also paid in cash to the sheriff $240.20, the amount due upon the executions in the sheriff's hands on the judgments in favor of the State; but, having learned at that time that the judgment of $921 in favor of Davis and Rankin had not been taken into consideration, he stopped the payment of the check which he had given the building association and the check was never paid, and the agent immediately demanded of the sheriff the amount paid him upon the execution. The sheriff refused to refund the money, but retained it, returned the execution satisfied, and the judgments against Clements were thus paid and satisfied out of the money furnished by Green, and that the money so paid to the sheriff by the agent has never been repaid to Green; that as soon as the sheriff refused to refund such money, the mortgage to Green was immediately recorded, and the balance of the money remaining in the hands of the agent, and also the note and mortgage, were delivered to Green, and afterwards, on the 13th day of October, 1898, Green transferred and assigned to Hosea H. Ristine this note and mortgage, Ristine paying therefor the sum of $50, the assignment of the same being as follows: "For value received, I hereby assign this note to Hosea H. Ristine. October 13, 1898. George Green;" that the mortgage and note are now the property of Ristine, and that nothing has ever been paid upon this note and mortgage other than the return of money to Green as above set out. In 1896 one

Harvey was attorney for the town of Ladoga, and when Dora Clements prepared to file her complaint she did not desire to do so if the town should insist that the mortgage executed to Hostetter would be by the town claimed to be a lien on her interest; that her attorney and Harvey agreed that, if she should file a suit to obtain her interest in the land and the proceeds of the sale, the town would not claim any lien upon any money which might be ordered and found due her from the sale, if Robert Clements should file his suit and attempt to obtain the amount due him by exemption; that Dora Clements thereupon filed this action, and the same was determined against her in the lower court, and she appealed the same to the Supreme Court, and obtained a reversal thereof; that Robert Clements, in 1896, filed his suit demanding his exemption out of such proceeds, and both parties are now prosecuting their suits; that after the reversal of her suit her attorney appeared before the town board, and informed them of his agreement with Harvey, and represented that the note and mortgage executed by Clements and wife to Hostetter were worthless, and that their only chance to realize thereon was through the agreement with Harvey; that the town board at the time believed that the only ordinance upon the subject of liquor licenses was the ordinance of 1877, which had been in fact superseded by the ordinance of 1880, and that they did not know of the existence of this last named ordinance, and, believing the note and mortgage could not be enforced, the board authorized Hostetter to assign the same to one Daugherty to use the same for whatever benefit it might be to Dora Clements; thereupon Hostetter, who was no longer town clerk, assigned the note and mortgage to Daugherty; that the assignment was made without any consideration by Daugherty or Dora Clements to the town; that nothing has ever been paid on the same, which is long past due; that Daugherty, upon application, was thereupon made a party to this suit, and filed his cross-complaint to foreclose, and

afterwards assigned the note and mortgage to Dora Clements.

The court stated as conclusions of law: (1) The assignment to Daugherty of the Clements' note and mortgage given to Hostetter was void, and transferred no interest the town had therein; (2) that the mortgage is valid to the extent of $100 upon the funds involved in this suit; (3) that the mortgage by Robert and Dora Clements to George Green is void as to Dora Clements, and valid as to Robert in the sum of $240.20; (4) that Ristine should be subrogated to the rights of the State in its several judgments against Robert Clements, and that he has a first lien on the interests of Robert Clements in the fund in controversy; (5) that Robert Clements' interest in the fund is $162.16, and that the lien of Ristine should be foreclosed on that amount; (6) that Ristine should recover $290.20 from Robert Clements, and is entitled to $162.16 of the fund paid the clerk by the executor of Davis' estate; (7) that the town of Ladoga should recover $100, and is entitled to a judgment against Robert Clements for that sum and the foreclosure of its mortgage upon the funds in controversy against Robert and Dora, and that the town has a lien for that sum upon the amount due Dora Clements; (8) that Dora Clements is entitled to $300 of the money in controversy; that her interest would be $400, but the town is entitled to $100 of that sum. Nine, ten, and eleven are concerning costs.

This is a third appeal. *Davis* v. *Clements,* 148 Ind. 605; *Clements* v. *Davis,* 155 Ind. 624. Upon the last appeal it was held that Dora Clements was entitled to one-third of the proceeds realized on the building and loan foreclosure sale, there being a sufficient amount remaining to pay such third after paying the mortgage debt. In the trial court, when the case was remanded, new parties were made and new issues joined.

Appellant Ristine and appellee Dora Clements each excepted to each conclusion of law. They each—the former by assignment of error and the latter by an assignment of cross-error—question the validity of the note and mortgage given Hostetter for the license fee.

Prior to the approval of the act of March 31, 1879 (Acts 1879, p. 201), which amended §22 of the act of 1852 (1 R. S. 1852, p. 482), towns were not authorized to license by ordinance the sale of intoxicating liquors. The seventh clause of §22 of the act of 1852, which is the seventh clause of §4357 Burns 1901, authorizes towns to license the sale of intoxicating liquors, and provides that, "a sum not exceeding the amount required by the statutes of the State for license to sell or retail intoxicating liquors, may be required to be paid into the treasury of the corporation by the person so licensed before receiving such license." At the time Clements and wife gave the note and mortgage for the license fee, there was in force an ordinance of the town of Ladoga making it unlawful to sell liquors in the town without first procuring from the board of trustees a license, and also providing that a person desiring to obtain such license should make application to the clerk of the board, showing he had obtained a license from the proper county authorities, and should tender a receipt from the town treasurer for $100 as payment for the license for one year from the date of its issue, whereupon the clerk should make out a license authorizing such sale for one year, which license should be signed by the president of the board and attested by the clerk.

The statute leaves it optional with the town whether it will require the payment of the license fee in advance of the issuing of the license. But by the ordinance the license could not be issued until the applicant presented the treasurer's receipt for $100 as payment for the license.

The right given by the legislature to a town to require a license to sell liquor has for its object the restriction of the

business and is upon the theory that the business is one "which requires restraint because it is harmful to society." *City of Indianapolis* v. *Bieler,* 138 Ind. 30; *Emerick* v. *City of Indianapolis,* 118 Ind. 279. The granting of the license is not the execution of a contract, but is a permit granted under laws enacted in an exercise of the police power of the State. *McKinney* v. *Town of Salem,* 77 Ind. 213.

An ordinance enacted with the formalities required by law has the same effect within the corporate limits and with respect to persons upon whom it lawfully operates that a legislative act has upon the people at large. The inhabitants of the particular locality are the corporation, which is represented by the board of trustees. When the trustees, clothed with local and limited powers of sovereignty, have enacted an ordinance or local law, thus prescribing a general and permanent rule, they have no authority to set aside or disregard the ordinance except in some manner prescribed by law. See *Swindell* v. *State, ex rel.,* 143 Ind. 153, 35 L. R. A. 50; *Citizens Gas, etc., Co.* v. *Town of Elwood,* 114 Ind. 332; *Bills* v. *City of Goshen,* 117 Ind. 221, 3 L. R. A. 261. They simply represent the municipality, and with the ordinance in force they had no authority to issue a license except as provided by the ordinance. A condition precedent to issuing the license was presenting a receipt from the town treasurer for $100. The trustees had no authority to exact the license fee except by virtue of the ordinance.

It is true that a municipal corporation has the power to receive, as payee, a note and mortgage for a debt lawfully due to such corporation. But a license fee, the payment of which is a condition precedent to issuing the license, is in no sense a debt owing the municipality. The fact that he had been selling for some months without a license did not make him indebted to the town for the license fee. If he voluntarily sold during those months without attempting to

procure a license, he simply violated the ordinance, and was subject to its penalties. In such case the license, when issued, could not be dated back to protect sales made before the license was issued. The license could not be issued until the fee was paid, and if sales were made they were made without a license, not under a license that was not paid for. The primary purpose in exacting the license fee is not to increase the revenue of the municipality, but it is imposed from motives of public policy to restrain the sale of a commodity that is harmful to society. The language of the ordinance admits of no doubt that the payment of the license fee is a condition precedent to the issuing of the license, and that it requires that the money should be paid into the town treasury. If the town authorities may disregard the provisions of an ordinance in part, they may disregard it as a whole, and, as the whole ordinance could be practically annulled by the acceptance of a note for the license fee, such note is void as being contrary to public policy. Moreover, a license issued without the payment of the license fee as contemplated by the ordinance is a void license, and a note given in payment for such license is without consideration. *Hencke* v. *Standiford,* 66 Ark. 535, 52 S. W. 1; *Zielke* v. *State,* 42 Neb. 750, 60 N. W. 1010; *Fry* v. *Kaessner,* 48 Neb. 133, 66 N. W. 1126; *Doran* v. *Phillips,* 47 Mich. 228, 10 N. W. 350; *McWilliams* v. *Phillips,* 51 Miss. 196; *City of Craig* v. *Smith,* 31 Mo. App. 286; *Munsell* v. *Temple,* 8 Ill. 93; *Spake* v. *People,* 89 Ill. 617; *Handy* v. *People,* 29 Ill. App. 99; *Houser* v. *State,* 18 Ind. 106; *Dudley* v. *State,* 91 Ind. 312; *McLeod* v. *Scott,* 21 Or. 94, 26 Pac. 1061, 29 Pac. 1; Black, Intox. Liq., §§183, 184.

Upon the facts, the conclusion of law that the mortgage by Robert and Dora Clements to Green is void as to Dora Clements is right. She was induced to sign the mortgage upon representations made to her that the money to be furnished by Green would pay all encumbrances, and that the

Green mortgage would be the only encumbrance on the land, which representations were not true. The finding does not show that the validity of the Green mortgage was adjudicated in the foreclosure suit by the building and loan association. The complaint in that case simply averred that on a certain date Green took the mortgage from the Clements "which plaintiff says is subsequent to their mortgage." Green did not ask any adjudication as to his mortgage by way of cross-complaint or otherwise, but suffered default.

Upon the cross-errors assigned by Dora Clements the judgment is reversed, with instructions to restate the conclusions of law.