STATE OF IOWA ex rel. GEORGE COSSON, Appellee, v. SHORES-MUELLER COMPANY, Appellant.

**LICENSES: Payment and Collection—Civil Action to Recover.** Civil
1   actions by the state for the recovery of *license* fees will not lie, in the absence of statutory authority therefor.    So held as to the license fee provided for manufacturers, etc., of concentrated feeding stuffs.    (Sec. 5077-a10, Code Supp., 1913.)

**STATUTES: Construction—"Inspection" Versus "License" Fees.**
2   The use of different terms in the same statute, in a manifest effort to discriminate between the meaning of each, necessarily forecloses the contention that they are synonymous.    So held as to the terms "license fees" and "inspection fees."

*Appeal from Bremer District Court.*—M. F. EDWARDS, Judge.

JANUARY 12, 1918.

SUIT in equity in behalf of the state of Iowa against the defendant to recover $100 per year for the years 1910, 1911, 1912, 1913, and 1914, as alleged license or inspection fees due from the defendant to the state of Iowa, under the provisions of Section 5077-a10, Code Supplement, 1907. There was a demurrer to the petition, which was overruled. The defendant electing to stand upon his demurrer, judgment was entered accordingly.    The defendant appeals.— *Reversed.*

*F. E. Farwell, F. P. Hagemann,* and *Ralph A. Dunkelberg,* for appellant.

*George Cosson,* Attorney General, and *Henry E. Sampson,* Assistant Attorney General, for appellee.

EVANS, J.—I. The allegations of the petition include the following: "That the defendant is an Iowa corporation, organized in 1906, with its principal place of business at Tripoli, Iowa, and since its organization has been engaged in the business of manufacturing, exposing for sale, offering for sale, and selling to the citizens of Iowa concentrated commercial feeding stuffs, as defined in Section 5077-a8 of the Supplement to the Code, 1907, in various forms and under different names and brands and for different animals.

1. LICENSES: payment and collection: civil action to recover.

"That the defendant has been, during each of the past five years, and still is, manufacturing, exposing for sale, offering for sale, and selling to the citizens of Iowa concentrated commercial feeding stuffs, as defined in Section 5077-a8 of the Supplement to the Code, 1907, as appears more particularly in the three following paragraphs.

"1.   The defendant has, during each and all of the past five years, manufactured, exposed for sale, offered for sale, and sold to the citizens of Iowa, concentrated commercial feeding stuffs, as defined in Section 5077-a8 of the Supplement to the Code, 1907, under the name of the Shores-Stock Conditioner, the bulk of which preparation is made up of ground seeds of foxtail, black bindweed, black mustard, chaff, wheat, bran, and starch grains. Common salt constitutes about twenty per cent of said preparation. Three or four drugs are present in slight quantities.

"2.   The defendant has also, during each and all of the past five years, manufactured, exposed for sale, offered for

sale, and sold to the citizens of Iowa, concentrated commercial feeding stuffs, as defined in Section 5077-a8 of the Supplement to the Code, 1907, under the name of the Shores Condition Powder, the bulk of which preparation consists of ground seeds of foxtail, black bindweed, black mustard, chaff, starch grains, and corn starch, colored with charcoal. About one fifth of said preparation consists of ordinary common salt. Two or three drugs are present in very slight quantities.

"3. The defendant has also, during each and all of the past five years, manufactured, exposed for sale, offered for sale, and sold to the citizens of Iowa concentrated commercial feeding stuffs, as defined in Section 5077-a8, Supplement to the Code, 1907, under the name of the Shores Hog Worm Powder, the bulk of which preparation consists of ground seeds of foxtail, black mustard, black bindweed, chaff, starch grains of corn and wheat, all colored with a small quantity of charcoal. Ordinary common salt constitutes over twenty per cent of said hog worm powder. There is also present in said mixture two or three drugs, in very small quantities.

"That the dairy and food commissioner of the state of Iowa, has, upon diverse occasions and from time to time during each of the past five years, analyzed and inspected the several forms of concentrated commercial feeding stuffs which the defendant has, during each of the past five years, been manufacturing, exposing for sale and selling to the citizens of Iowa, all as required by Chapter 13, Title XXIV, Supplement to the Code, 1907.

"That the defendant has failed and refused to pay to the state dairy and food commissioner of Iowa, on or before the 15th day of July of each year during the time its said company has been in business, the inspection fee of $100, required under Section 5077-a10 of the Supplement to the Code, 1907, or any part thereof, and that, by reason of

such failure and refusal, there is now due the state of Iowa from the defendant herein the sum of $100 for the year 1910, the sum of $100 for the year 1911, the sum of $100 for the year 1912, the sum of $100 for the year 1913, and the sum of $100 for the year 1914, making an aggregate amount of $500 now due the state of Iowa from the defendant herein.

"That the state dairy and food commissioner has, from time to time during the past 5 years, and as the same became due, made demand upon said defendant for the payment of every such annual inspection fee, and has been unable to collect from said defendant said inspection fee or any part thereof. That the several annual inspection fees of $100 each, sought to be recovered from the defendant, are for a continuous period and for consecutive years, commencing with the year 1910 and extending to and including the year 1914, and due upon an open, current, and continuous transaction."

The demurrer challenged:

(1)   The right of the plaintiff to maintain a civil action for the recovery of such fees.

(2)   The constitutionality of the statute invoked.

The legislation under which the fees claimed are alleged to have accrued was enacted as Chapter 189 of the Acts of the Thirty-second General Assembly, and now appears as a part of Sections 5077-a6 to 5077-a24, inclusive.

Section. 5077-a8 is as follows:

"The term concentrated commercial feeding stuffs, as used in this act, shall include alfalfa meals and feeds; dried beet refuse; ground beef or fish scraps; bean meals; dried blood; brewers' grains, both wet and dry; cerealine. feeds; cocoanut meals; corn feeds; corn and oat feeds; corn, oat and barley feeds; compounds under the name of corn and cob meals; corn bran; clover meal; cottonseed meal and feeds; germ feeds; distillers' grains; gluten meals; gluten feeds; hominy feeds; linseed meals; malt refuse; malt

sprouts; meat meals; meat and bone meals; mixed feeds of all kinds; oil meals of all kinds; oat feeds; oat bran; oat flour; oat middlings; oat shorts; pea meals; poultry foods; rice bran; rice meal; rice polish; rye bran; rye middlings; rye shorts; starch feeds and starch factory by-products; tankage and packing house by-products; wheat bran; wheat middlings; wheat shorts; and low grade wheat flour; and all materials of similar nature used for domestic animals; also condimental stock foods; patented proprietary or trade-marked stock or poultry feeds claimed to possess me· dicinal or nutritive properties or both; and all other materials intended for feeding to domestic animals. But it shall not include: hay; straw; whole seeds; unmixed meals made from the entire grains of wheat, rye, barley, oats, Indian corn, buckwheat, and broom corn; nor wheat flours nor other flours fit for human consumption."

Section 5077-a10 is as follows:

"Before any manufacturer, importer, dealer or agent shall offer or expose for sale in this state any of the concentrated commercial feeding stuffs defined in Section three (3) of this act, he shall pay to the state food and dairy commissioner an inspection fee of ten cents per ton for each ton of such concentrated commercial feeding-stuffs sold or offered for sale in the state of Iowa for use within this state; except that every manufacturer, importer, dealer or agent for any condimental, patented, proprietary or trade-marked stock or poultry foods, or both, shall pay to the state food and dairy commissioner, on or before the fifteenth day of July of each year, a license fee of one hundred ($100.00) dollars, in lieu of such inspection fee. Whenever the manu· facturer or importer of such foods shall have paid the fee herein required, no other person or agent of such· manufacturer or importer shall be required to pay such license fee; and shall affix to each lot shipped in bulk, and to each bag, barrel or package of such concentrated commercial feed-

ing-stuffs, a tag, to be furnished by the said state food and dairy commissioner, stating that all charges specified in this section have been paid; provided, that the inspection fee herein required shall not apply to unadulterated wheat, rye and buckwheat bran, nor wheat, rye and buckwheat middlings, nor to wheat, rye and buckwheat shorts manufactured in this state. * * *"

2. STATUTES: construction: "inspection" versus "license" fees.

The first question confronting us is whether a civil action by the state will lie for the recovery of the fee of $100 provided for in the foregoing section. The argument for the plaintiff is that the fee in question is an *inspection* fee, and not a *license* fee; that the inspection of the defendant's goods was had pursuant to the statute; that it was, therefore, obligatory upon the defendant, under the terms of the statute, to pay the inspection fee; and that this obligation was necessarily a personal obligation, and the equivalent of a debt.

It is not claimed by the plaintiff that a civil action will lie for the recovery of a *license* fee, in the absence of statutory authority. Naturally, the defendant contends that the fee in question is a *license* fee, and not an *inspection* fee. The statute in express terms so denominates it, and provides for "a *license* fee of $100 in lieu of such *inspection* fee." The term "license fee" is not used as a possible synonym of the term "inspection fee," but is clearly used in contradistinction thereto. We would not be justified, therefore, in departing from the plain terms of the statute, and in construing this provision as other than a "license fee." This conclusion renders it unnecessary that we consider the question whether a civil action might lie for the recovery of a mere inspection fee, as distinguished from a license fee. It is well settled by the authorities that, in the absence of statutory authority, a civil action will not lie to recover a license fee. We so held in *Incorporated Town of Scran-*

*ton v. Henson,* 163 Iowa 457.   To the same general effect are the following authorities:   *Doran v. Phillips,* 47 Mich. 228 (10 N. W. 350) ; *Hencke v. Standiford,* 66 Ark. 535 (52 S. W. 1) ; *United States v. Jourden,* 193 Fed. 986 ;  *United States v. Northwestern Dev. Co.,* 203 Fed. 960; *Territory of Arizona v. Kenney,* 11 Ariz. 353 (95 Pac. 93) ; *State v. Dix,* 159 Mo. App. 573 (141 S. W. 445).   Ordinarily, the payment of a license fee is not obligatory, except in an alternative sense. The payment is a precedent condition to the exercise of some privilege by the applicant which would be forbidden without a license.   If he fails to pay the license fee, he may not lawfully exercise the privilege sought.   If he afterwards perform the privileged acts without the license, he becomes criminally liable, and is punishable accordingly.   Subsequent payment of the license fee would not purge the criminality; nor would the criminality imply a precedent promise to pay.   On the contrary, a precedent promise to pay would tend to negative criminal intent.

We must hold, therefore, that, unless we can find authority therefor in the enactment under consideration, this civil action will not lie.

II.   We have studied the various sections of this act with much care, to discover whether its language may be construed as authority for maintaining a civil action for the recovery of this license fee.   We find nothing therein that would justify an affirmative holding.

Indeed, as respects this particular provision, this statute is of doubtful construction even for the purpose of a criminal prosecution.   Ordinarily, such a statute would forbid the selling or exposing for sale of the specified goods before the payment of a license fee.   The criminality in this class of offenses consists, not in the failure to pay a license fee, but in the selling of the goods before paying such fee. But Section 5077-a10 does not, in terms, require the payment of the fee before the goods be sold or exposed for sale.   It

only requires the payment of the same "on or before the fifteenth day of July of each year." It seems to extend to the dealer a credit of six months, as though he might lawfully sell for the first six months of the year *before* he pays the license fee. Failure to pay the license fee on or before the fifteenth day of July of each year would doubtless render the dealer criminally liable for sales thereafter made. But would it render criminal the sales. of the year made "before the fifteenth day of July of each year?"

We are not assuming now to construe this statute for the purposes of a criminal prosecution. All we hold now is that there is nothing therein which can be said to authorize a civil action to recover this license fee. Our reference to the doubtful form of the statute may be of aid in obtaining for it the further consideration of the legislature.

The question of the constitutionality of the statute has been argued in the briefs. Our conclusion on the first question renders it unnecessary that we give any attention to the second. For the reason indicated, the judgment below must be—*Reversed.*

PRESTON, C. J., LADD, GAYNOR, SALINGER, and STEVENS, JJ., concur.