## HOWARD v. MAHONEY.

No. 29640. Sept. 24, 1940.

Rehearing Denied Oct. 22, 1940.

*106 P. 2d 267.*

Fred M. Hammer and Major J. Parmenter, both of Oklahoma City, for plaintiff in error.

A. P. Van Meter, of Oklahoma City, for defendant in error.

BAYLESS, C. J. O. R. Howard filed an action in the district court of Oklahoma county to enjoin the use by Jennie L. Mahoney of adjoining property in a manner violative of certain zoning ordinances of Oklahoma City. A special demurrer to the second amended petition was sustained, and Howard appeals.

He alleges the ownership of the described adjoining premises by him and defendant, respectively, and that both were located within the district zoned for U-1 use. He then pleads certain sections of chapter 25, Oklahoma City General Ordinances, Revision 1936, of which we note the following: Section one (1) defines a lot: "A 'lot' is a parcel of land occupied by one building and the accessory buildings or uses customarily incident to it"; a family: "A 'family' is any number of individuals living together on the premises as a single unit"; a dwelling: "A 'dwelling' is a building arranged, intended, or designed to be occupied by not more than two families living independently of each other"; and an apartment house: "An 'apartment house' is a building arranged, intended, or designed to be occupied by three or more families." Section 2 provides for groups and classes. Section 3 defines U-1 use including dwellings, but does not mention apartment houses. Section 13 provides for nine uses. Section 14 declares that all of Oklahoma City shall be classified for U-1 use unless otherwise expressly excepted, and it stands admitted that the premises herein are zoned for U-1 use only. Section 28 reads:

"Dwelling. In a class U-1 district no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used for a class U-2, U-3, U-4, U-5, U-6, U-8, or U-9 use. In a class U-1 district no building or premises shall be used, and no building shall be erected which is arranged, intended or designed to be used except for a class U-1 use."

Section 30 permits so-called accessory buildings "customarily incident" to U-1 use, these buildings including garages, but no mention is made of so-called garage apartments—that is, apartments over or connected with garages. He then pleads:

"Plaintiff further alleges that sometime during the month of March, 1939, the defendant commenced or caused to be commenced the construction in the rear of the premises heretofore described as belonging to her, a large garage and apartment, the exact size of which he is unable to allege with any degree of certainty, and commenced or caused to be commenced the construction of three separate, distinct and individual apartments or rooms, two of which are over said garage and the other below and in connection therewith, the same being designed and intended for the use of separate families or groups; that the construction of same was completed approximately the 1st day of May, 1939, and defendant thereafter rented the same to various tenants whose names are unknown to him.

"That on or about the 1st day of May, 1939, or shortly thereafter, said defendant commenced or caused to be commenced the construction of an annex or addition to her house located on the front portion of said premises, designed and intended to be occupied by a separate family or group thereby making accommodations for two separate families, individuals or groups of people upon said premises.

"Plaintiff further alleges and states that said defendant was and is guilty of a violation of the ordinances hereinabove set forth, in that the same restrict or limit the use of any premises in a U-1 district for more than two separate families, individuals or groups of people, or the construction of any building designed or intended to be used by more than two families, individuals or groups of people. * * * That the said defendant, as heretofore alleged, has constructed or caused to be constructed a dwelling or garage apartment, containing three separate and distinct apartments, intended and designed to accommodate or to be used by three separate families, individuals or groups of people, and has constructed or caused to be constructed an annex or addition to her house intended and designed to make accommodations for at least five separate families, individuals or groups of people on said premises heretofore described, all of which is in direct violation of the existing valid and binding ordinances of the said city of Oklahoma City as heretofore set out."

It may be well to point out that the issue now presented to us does not involve the restraint of construction, for that stage is passed. We quote the following statement from Howard's brief:

"We want the court to understand that plaintiff did not ask for an injunction against the erection of those structures, but is merely asking that the defendant be restrained from using them for a purpose which she evidently intends, for the reason that such use would be a direct violation of the zoning regulations."

Mahoney contends the issues raised are now moot because the construction has been completed and the court should not attempt now to enjoin an accomplished fact. Westgate Oil Co. v. Refiners Production Co., 172 Okla. 260, 44 P. 2d 993. We think, as pointed out by Howard, the relief sought includes an injunction against use after construction, and under Jackson v. Denver Producing & Refining Co., 96 Fed. 2d 457, a case will not be dismissed where only one issue may be called moot and there are other issues yet to be determined. Section 28, supra, forbids the use as well as the erection of buildings in violation of U-1 use. This issue is not moot, for by the demurrer Mahoney admits she is yet using the buildings in violation of U-1 use, if such use constitutes a violation of U-1 use.

Howard argues that the sections of the ordinances quoted plainly apply to the situation here, and points out that while the garage is permissible as an accessory use, that the use of the apartment on the first floor and the apartments on the second floor thereof, as living quarters for three families, amounts to use as an apartment house, and that the rearrangement of the one-family house into a two-family unit will result in five families using one lot, when a lot is

intended by definition to be restricted in occupancy to one building and accessory buildings.

As we understand his argument, while the re-arrangement of the house from a building of one family capacity to a building of two-family capacity might be permissible within the terms of the ordinances, the use of it becomes a violation of the ordinances under the record before us.

Mahoney takes the position that none of these contentions can be sustained by the language of the ordinances pleaded, but that resort to interpretation of the most liberal character must be indulged in order to gather such meanings from the language. She argues that the ordinances are penal in character and must be construed strictly. There are authorities to the effect that zoning ordinances are in derogation of the common-law rights to use property so as to realize its greatest utility (Monument Garage Corp. v. Levy, 266 N. Y. 339, 194 N. E. 848) and should not be extended by implication to cases and situations clearly not within the scope of the purpose and intent manifest in the language (Landay v. MacWilliams [Md.] 196 Atl. 293, 114 A. L. R. 984); but there are also authorities to the effect that such ordinances will be given a reasonable and fair construction in the light of the subject dealt with and the manifest intention of the lawmakers. Appeal of Perrin (Pa.) 156 Atl. 305, and other cases.

The essential purpose of zoning ordinances is to stabilize property uses. Strain v. Mims, 123 Conn. 275, 193 Atl. 754. In virtually all of the ordinances relating to the use of property, residence use is classed by itself and the encouragement of the segregation of residential districts for the benefit of wholesome family life is paramount in all of the decisions approving such ordinances.

We think this intention is manifested in the ordinances before us. Section 28, supra, forbids the use of U-1 districts for any of the uses incident to uses U-2 to U-9, and virtually repeats itself by again forbidding the use of U-1 districts for anything other than U-1. In other words, the use of property within U-1 for any purpose not specified as permissible and that falls in another U class is deemed inimical to the creation of residence districts designed and intended for family residence use and all that such family residence use implies.

Therefore, when Mahoney constructed a three-family unit in connection with her garage she clearly violated the language of the ordinance, and when she admits by her demurrer that she is using this building for what amounts to apartment house purposes, in addition to the accessory use permissible, she clearly admits a violation of section 28. As pointed out in Baddour v. City of Long Beach, 279 N. Y. 167, 18 N. E. 2d 18, garage use has a definite and well-understood meaning as an accessory to a residence.

Mahoney says there is nothing in the language of the ordinances prohibiting more than one two-family dwelling on one lot, nor is there anything in the language that expressly limits the number of families that can reside on one lot in this U-1 district. That is true.

But, as said in Baddour v. City of Long Beach, supra:

"There is nothing in the ordinance that specifically, in words, prohibits the use of the property for the keeping of roomers and boarders, but there is nothing vague or indefinite in its purpose or meaning. It prohibits the use of the property for business purposes. Construed in the light of its history, it excludes the use of the property for a boarding or rooming house."

In People v. Gold, 6 N. Y. S. 2d 264, the court said:

"The ordinance itself gives a clue to the meaning intended by its draftsmen. Hotels are prohibited in residence 'A' and 'B' use districts, but are permitted in residence 'C' district. 'Hotel' is defined in the ordinance as a building used for the purpose of furnishing meals, etc., to travelers and visitors. Thus the distinguishing characteristic of a hotel is the transitory nature of its patronage. This distinction is recognized in Bou-

vier's Law Dictionary, Century Ed. 1926, where it is said at page 131: 'In a boarding house the guest is under express contract, at a certain rate, for a certain time; but in an inn there is usually no express engagement; the guest, being on his way, is entertained from day to day.' * * *

"* * * The primary purpose of a residence district is safe, healthful and comfortable family life rather than the development of commercial instincts and the pursuit of pecuniary profits. * * * The term 'boarding house' will not be extended to include a commercial establishment the primary purpose of which is to furnish health and reducing treatments rather than rooms and board. * * *"

With these authorities in mind, we do not think it involves an undue or unusual strain upon the language used in the ordinances to say that apartment houses are forbidden within this district, and to say further that the city government intended to forbid overcrowding by limiting the number of dwellings and families to a given lot of city property.

An apartment house accommodating, say, 20 families might be built upon less space, and perhaps might be less inimical to the family residence use than, say, ten duplexes accommodating 20 families erected on one city lot. We think that any use for multiple family use, equaling or exceeding an apartment building, clearly forbidden, is a violation of the spirit and language of the ordinances. As said above, "the ordinance itself gives the clue" by its restricted definitions of lots, dwellings, apartment houses and uses.

We do not think the demurrer should have been sustained.

We do not think the argument of laches is sustainable under the record before us. Since the use in violation of the ordinance is as explicitly forbidden as building in violation thereof is, the plea of laches ought not to apply, at least insofar as this record is concerned.

Judgment reversed.

CORN, GIBSON, HURST, and DANNER, JJ., concur.