MEYER *v.* SEIFERT.

4-9018                                    225 S. W. 2d 4

Opinion delivered December 12, 1949.

Appellants *pro se.*

*Wm. Gibson* and *M. F. Elms,* for appellees.

LEFLAR, J.   Appellant G. A. Meyer on behalf of himself and other property owners filed this bill in equity for a mandatory injunction to require the removal of a non-fireproof building erected by defendants Seifert and Mahle, under a permit granted by the other defendants (City of Stuttgart, Ark., and the Mayor, City Clerk, and Aldermen of said city, in their official capacities) within a fire zone in which the erection of such buildings was prohibited by city ordinances. The Chancery Court refused to issue the injunction, and plaintiff appeals.

City Ordinances No. 277 and 386 of the City of Stuttgart clearly prohibit the erection of the frame building here involved at the place where it was erected. The first question[1] before us is whether the "permit" relied upon by defendants, authorizing the erection of the building as and where it was erected, is valid. The ordinances in their relevant clauses contain nothing except a flat prohibition against non-fireproof construction. In other sections Ordinance No. 277 sets up procedures for the issuance of permits for exceptional construction of certain special types within fire zones, but there is nothing in either ordinance that authorizes anybody—either the City Council, the Mayor, or any other official or body—to make exceptions to its general prohibition against the erection of frame buildings such as the one now in question within the "fire limits" specified by the ordinances. The "permit" relied upon by defendants was approved by a resolution passed by majority vote of the City Council at a regular meeting, the resolution not being in the form of nor enacted as an ordinance.

---

[1] No attention is given herein to a question raised as to the propriety of appellant's representation in this court, the matter having been satisfactorily explained in the briefs.

The general zoning law of Arkansas (Ark. Stats., 1947, §§ 19-2804 to 19-2807, inclusive) contains a provision (in § 19-2806) whereby the City Council or a commission created by it may grant special permission for exceptions in particular instances. Another enactment appearing in Ark. Stats. (1947), §§ 19-2802 and 19-2803, authorizes cities to prohibit the erection of buildings within their limits except after issuance of permits in the manner prescribed by the City Council. The Stuttgart fire zone ordinances, however, were not enacted under the authority of either of these statutes, and the permit procedures authorized by them are irrelevant here. See *City of Stuttgart* v. *Strait,* 212 Ark. 126, 205 S. W. 2d 35. These ordinances were enacted under the authority conferred upon cities to guard against destruction of buildings from fire, by Ark. Stats. (1947), § 19-2801. This statute sets out no procedure whatever for issuance of permits. It does not prohibit cities from enacting fire zone ordinances containing provisions for issuance of permits in cases deemed exceptional; rather, it leaves the matter up to each city. There is nothing in the statute that prescribes a method for issuance of permits for exceptions if a city does not wish to authorize exceptions.

May a City Council, when neither the ordinance nor the basic statute authorizes permits for exceptions to the ordinance, nevertheless by resolution grant such permits? We believe not. The problem is not unlike that presented by any general law, one prohibiting arson, for example. If the lawmaking body chooses to include no exceptions in the law, and no provision for authorizing exceptions, then permits to violate it cannot be granted by anybody, not even by the very lawmaking body that enacted the law. The law can be changed or set aside only by a new enactment having the same or greater quality and dignity.

Numerous cases involving city ordinances so hold. "It is well settled that an ordinance cannot be repealed, or amended, or suspended by a resolution." *People ex rel. Raymond* v. *Latham,* 203 Ill. 9, 67 N. E. 403, 408. In

*G. W. Mart & Son* v. *City of Grinnell,* 194 Iowa 499, 187 N. W. 471, a theatre owner sought to avoid an ordinance prohibiting Sunday shows, relying in part on a resolution passed by the City Council allowing him to operate on Sunday. The court rejected the argument, saying "If a repeal of the ordinance was intended, it was not repealed. An ordinance is not affected by resolution, nor may it be amended or changed in this manner. An ordinance is amended, repealed or suspended by an ordinance only." *State* v. *Jordan,* 149 La. 312, 89 So. 15, held that a City Council resolution discharging a municipal employee in a manner contrary to a general city ordinance was ineffectual. *Risteen* v. *Clements,* 31 Ind. App. 338, 66 N. E. 924, held that a liquor store permit granted by a town council without compliance with the terms of an ordinance previously adopted by the council was invalid, using this language: "When the [council], clothed with local and limited powers of sovereignty, have enacted an ordinance or local law, thus prescribing a general and permanent rule, they have no authority to set aside or disregard the ordinance except in some manner prescribed by law. . . . They simply represent the municipality, and with the ordinance in force they had no authority to issue a license except as provided by the ordinance." And see *Stratton* v. *Warrensburg,* 237 Mo. App. 280, 167 S. W. 2d 392. It is our conclusion that these decisions are sound, and that the permit issued by the Stuttgart City Council in violation of its general ordinances was invalid.

A second contention urged by the defendants is that equity is without power, or should not exercise the power, to enjoin maintenance of the prohibited structure. The argument is that the ordinance prescribes criminal punishments, making violation a misdemeanor punishable by fine of not less than $10 nor more than $100 for each day of violation, and that this remedy is exclusive. That equity will not act to restrain ordinary violations of the criminal law, but will leave the task of enforcing the criminal laws to courts having criminal jurisdiction, is basic learning in our legal system. But is equally basic

that if grounds for equity jurisdiction exist in a given case, the fact that the act to be enjoined is incidentally violative of a criminal enactment will not preclude equity's action to enjoin it.

In one of the most publicized cases that ever arose in Arkansas, Chancellor Martin enjoined the holding at Hot Springs of a world championship heavyweight prizefight between James J. Corbett and Robert Fitzsimmons. *State ex rel. Atty. Genl.* v. *Corbett, Fitzsimmons, et al.,* Martin's Chanc. Decisions 366. Judge Martin conceded that ordinarily equity does not enjoin the commission of crimes, but pointed out that it does issue such injunctions where property interests are involved, and emphasized the prospective property injuries threatened by the prizefight, notably the payment of money by purchasers of tickets of admission to the illegal enterprise, losses by bettors, the use and congestion of some buildings which might be harmful to other adjoining buildings, and the possible loss of property to thieves, pickpockets and similar gentry who might come to the state for the fight. The most frequently quoted statement of the rule in Arkansas appears in *State* v. *Vaughan,* 81 Ark. 117, 126, 98 S. W. 685, 690, 118 Am. St. Rep. 29, 11 Ann. Cas. 277, 7 L. R. A., N. S. 899, where, after denying the injunction in the particular case, Chief Justice HILL added: "On the other hand, if the public nuisance is one touching civil property rights or privileges of the public, or the public health is affected by a physical nuisance, or if any other ground of equity jurisdiction exists calling for an injunction, a chancery court will enjoin, notwithstanding the act enjoined may also be a crime. The criminality of the act will neither give nor oust jurisdiction in chancery." Accord: *Hudkins* v. *Arkansas State Board of Optometry,* 208 Ark. 577, 187 S. W. 2d 538; *State ex rel. Atty. Genl.* v. *Karston,* 208 Ark. 703, 187 S. W. 2d 327; *State ex rel. Hale* v. *Lawson,* 212 Ark. 233, 205 S. W. 2d 204. Hundreds of cases in other states are to the same effect. See *State ex rel. Smith* v. *McMahan,* 128 Kans. 772, 280 Pac. 906, 66 A. L. R. 1072 (injunction against widespread practice of criminal usury); *Fitchette* v.

*Taylor,* 191 Minn. 582, 254 N. W. 910, 94 A. L. R. 356 (injunction against unauthorized practice of law); *State ex rel. Crow* v. *Canty,* 207 Mo. 439, 105 S. W. 1078, 15 L. R. A., N. S. 747, 123 Am. St. Rep. 393, 13 Am. Cas. 787 (injunction against illegal bull fights).

It is characteristic of most instances in which injunctions against criminal acts are sustained that the threat of punishment after the event will not have a very strong deterrent effect upon the offender. As to some acts, this is because the criminal punishment is small and unimportant as compared with the benefits or profits expected to be gained from the criminal act. Oftentimes the act is a recurrent or continuing one, necessitating numerous successive petty prosecutions if the regular criminal procedure is to be followed. Frequently the acts are such that it is difficult to get jury convictions, either because local juries are prejudiced against the enforcement of the particular law involved, or for some other equally practical reason. In effect these considerations point to (1) the practical inadequacy of the available legal (criminal) remedy, and (2) interference with property or other equitable protectible interests of the plaintiff or, if he has sued in a representative capacity, of a substantial group of the general public.

The decisions on the specific type of invasion of rights involved in the instant case are in accord with these principles. Many cases hold that a nearby property owner, for himself and others similarly situated, may enjoin the violation of building codes, zoning laws or similar enactments, on showing substantial threat of injury to his and their property. *Kaufman* v. *Stein,* 138 Ind. 49, 37 N. E. 333, 46 Am. St. Rep. 365; *Caskey* v. *Edwards,* 128 Mo. App. 237, 107 S. W. 37; *Fitzgerald* v. *Merard Holding Co.,* 106 Conn. 475, 138 Atl. 483, 54 A. L. R. 361; *Rice* v. *Van Vranken,* 225 App. Div. 179, 232 N. Y. Supp. 506; *Smith* v. *Collison,* 119 Calif. App. 180, 6 Pac. 2d 277. The case of *Lewis* v. *A. Hirsch & Co.,* 192 Ark. 209, 90 S. W. 2d 976, is not contrary to these cases. The *Hirsch* case merely held that one who sued as a citizen and taxpayer only, who did not claim to own any property

or show any prospective injury to himself, would not be granted an injunction against construction of a building in violation of a fire zone ordinance. It is true that in *Swaim* v. *Morris,* 93 Ark. 362, 125 S. W. 432, 20 Am. Cas. 930, there is language to the effect that such an injunction would be denied a property owner, but that case, a 3-2 decision, turned primarily on the majority's holding that the ordinance under which the plaintiff sought relief was an invalid enactment. And in *Van Hovenberg* v. *Holman,* 201 Ark. 370, 144 S. W. 2d 718, this court held squarely that an injunction should be sustained on behalf of a plaintiff property owner restraining defendant's erection of a filling station in a restricted zone in violation of a city ordinance. There we said: ''But the primary and fundamental purpose of the ordinance was to prohibit operation —not to punish. It is definitely settled that equity will not interfere to stay proceedings in a criminal matter. Here, however, the relief sought is abatement of unauthorized conduct. If it should be held that penalty of the ordinance deprived equity of jurisdiction, then any person desiring to proceed in violation of law could pay the maximum fine and become immune thereafter except as to damages. This is not the law.''

The plaintiff made a substantial showing of probable damage to his own and other adjoining properties through increased fire hazards arising from maintenance of defendants' building where they have placed it in violation of the Stuttgart fire zone ordinance. This constitutes a proper case for equitable relief, as against defendants Seifert and Mahle. As to them, the decree is reversed and remanded. It is not shown that a decree against the City of Stuttgart, its Mayor, City Clerk and Board of Aldermen would afford any relief to the plaintiff, therefore the decree is affirmed as to them.