JOSEPH LOWRY v. CITY OF MANKATO AND OTHERS.[1]

May 5, 1950.

No. 35,057.

[1]Reported in 42 N. W. (2d) 553.

*William Stradtmann* and *Norman H. Nitzkowski,* for appellant.
*Wilson, Blethen & Ogle,* for Model Dairy, Inc., and C. E. Brazier, respondents.

PETERSON, JUSTICE.

Action for an injunction to compel defendant city to revoke a building permit issued for the construction of a private garage and to enjoin the other defendants from constructing it, as being in violation of the city's zoning ordinance. Decision having been for defendants, plaintiff appeals from the order denying his motion for a new trial.

The questions presented for decision are:

(1) Whether a provision in a zoning ordinance authorizing the erection in a residence district of accessory buildings, including one private garage, should be construed as authorizing the construction of a private garage in such a district only when it also is an accessory building, where the ordinance divides the city into a business district and a residential district, permits in the latter only specified uses deemed suitable for a residential district, excludes therefrom business enterprises, and defines separately accessory buildings and private garages, and where the use of a private garage other than one which also is an accessory building would emasculate and defeat the purpose of the ordinance in dividing the city into the two districts mentioned; and

(2) Whether a building permit issued in violation of a zoning ordinance by an official lacking power to alter or vary the ordinance is void and the zoning regulation may be enforced notwithstanding the fact that the permittee has commenced building operations.

In 1932, the city of Mankato adopted a zoning ordinance which has been in force ever since. It contains numerous provisions usually contained in such ordinances. So far as here material, the ordi-

nance, "In order to regulate the use of land and the location and use of buildings erected or structurally altered for specified purposes" (§ 2), divides the city into two zones, viz., the "Business District" and the "Residence District." The zoning restrictions apply to the latter, but not to the former. By its terms, no structures may be erected in the residence district except such as the ordinance authorizes, and a violation thereof is declared to be a misdemeanor. Section 3 of the ordinance authorizes to be erected, and property therein to be used for, dwellings of two and one-half stories or less, parks or playgrounds, plant nurseries or greenhouses, churches, libraries, public and private schools, museums, recreational buildings, "Highways or Public Utilities lines or mains," and certain other uses. Farming and truck gardening therein are permitted.

Among the authorized or conforming uses so enumerated are "Accessory Buildings, including one private garage or private stable" when located upon a lot in a certain manner. An accessory building, a private garage, and a private stable are defined in § 1, subds. 1, 6, and 14, of the ordinance as follows:

"1. An accessory Building is a subordinate building, separated from or attached to the main building, the use of which is incidental to that of the main building or the use of the premises.

\* \* \* \* \*

"6. A Private Garage is a garage which has a capacity of not more than four (4) motor vehicles and when in use is used for private storage only. A Private Garage may exceed said four (4) motor vehicles capacity providing the area of the lot whereon such Private Garage is to be located shall contain not less than twelve hundred (1200) square feet for each motor vehicle stored.

\* \* \* \* \*

"14. A Private Stable is a stable with a capacity for not more than four (4) horses or mules."

The definitions of public garage and public stable appear in the footnote.[2]

---

[2]"7. A Public Garage is any garage of larger capacity than the maximum herein specified for a Private Garage and also all garages

Under certain circumstances, when authorized by an affirmative vote of four-fifths of all the members of the city council, certain other structures, designated as being for "Non-Conforming Uses," may be erected in the residence district, viz.: Public or private institutions of an educational, philanthropic, or eleemosynary nature, hospitals or sanitariums, aviation fields, penal or correctional institutions, public utility plants, and gasoline filling stations.

On June 25, 1948, the city engineer of the city of Mankato issued a building permit to defendant Model Dairy, Inc., which has its plant and office in the business district, to erect in the residence district a one-story concrete-block garage upon land there owned by it. The size of the garage to be constructed, the number of motor vehicles to be stored therein, and the area of the lot on which it was to be constructed were such as to constitute it a "private garage" within the definition of § 1, subd. 6, of the ordinance. The contemplated use thereof involved the storing of five or six trucks, used by the dairy company in conducting its business, during the late afternoon and night each day after they had been first loaded with ice cream at the company's plant in the business district and then driven to the garage, where they were to be stored, with the electrical refrigeration units in the trucks operating, until early the next morning and then started on their routes to make deliveries.

The dairy company's land is located in a block in the residence district, which is built up with houses and a church (St. John's Episcopal Church) on the lots facing the streets bounding it. The land in question is in the east half of the block facing an alley running north and south through the block and is about midway between the side streets. It is much lower than the lots behind it facing east toward the street. A retaining wall had been constructed between the land and such lots. Apparently, from the houses on

where motor vehicles are kept or stored for the public, or where motor vehicles are built, equipped, conditioned or repaired for the public, or where motor vehicles are kept for renting, letting or sale to the public."

"15. A Public Stable is a stable with capacity for more than four (4) horses or mules."

such lots there was a view over and across the land in question.

After the permit had been issued, the dairy company entered into a contract with defendant C. E. Brazier to construct the garage. When this action was commenced, construction had proceeded to a point where the retaining wall had been removed, the ground prepared for the erection of the building, and structural steel costing $1,120 had been purchased. If work was stopped, it would be necessary to construct a new retaining wall to replace the one removed. It was estimated that all this involved an expenditure of about $2,800. It appeared, however, that the structural steel could be used for other construction and thus be entirely salvaged. It did not appear what proportion the expense incurred bore to the entire cost of the garage.

It is conceded that the garage in question is a private garage as defined in § 1, subd. 6. The principal dispute here is as to whether § 3, by authorizing the construction of accessory buildings, including one private garage, evinces an intention to limit the authorization to only such private garages as are included in the definition of an accessory building, and whether, if that question be answered in the affirmative, the garage in question is an accessory building because of the fact that it is used in connection with the dairy company's building located in the business district in the operation of its business.

Plaintiff contends: (1) That, while the ordinance contains separate definitions of an accessory building and of a private garage (§ 1, subds. 1 and 6), a private garage may be an accessory building, and that, because private garages are not mentioned separately in the enumeration of the authorized structures, but only in the phrase "Accessory Buildings, including one private garage," an intention was manifested to authorize private garages only insofar as they are included in the definition of accessory buildings; and (2) that the permit for the construction of the garage in question, being one for the construction of a building prohibited by the ordinance, is absolutely void and should be revoked.

Defendants contend: (1) That, since a "private garage" is specifically defined in § 1, subd. 6, of the ordinance, the authorization in § 3 to erect "one private garage" is one to erect a private garage as thus defined, regardless of whether it also is an accessory building; but that, if the ordinance should be construed as authorizing the construction of a private garage in such district only when it is also an accessory building, the garage in question comes within the authorization, for the reason that it is accessory to its plant and as such is an accessory building within the meaning of the ordinance; and (2) that, because defendants dairy company and Brazier, in reliance upon the building permit, proceeded with the construction of the garage to the extent stated and incurred expense in that connection, the building permit has become irrevocable.

The meaning of the ordinance being somewhat obscure, it is necessary to construe it in order to determine its meaning. For example, not only accessory buildings and private garages are separately defined, but also public garages, public stables, and dwellings. Of these, only dwellings are enumerated separately among the conforming uses. Public garages and public stables are not mentioned at all. Accessory buildings, private garages, and private stables are not enumerated separately, but only conjunctively as "Accessory Buildings, including one private garage or private stable." Furthermore, the definition of an accessory building contains no express provision that both the accessory building and the one to which it is accessory must be upon the same premises.

Where there are conflicts in the provisions of a statute or ordinance, the conflicts should be harmonized and reconciled in such a manner, if possible, as to give effect to the principal and more important clauses manifesting the policy or purpose thereof. As we held in Sandy v. Walter Butler Shipbuilders, Inc. 221 Minn. 215, 223, 21 N. W. (2d) 612, 616, the policy as well as the letter of a statute (and that includes an ordinance) is a guide to the construction thereof, and the process fails of its true function if a literal reading results in emasculation or deletion of a provision

which a less literal reading would preserve. The principal and paramount purpose of the ordinance here involved is to divide the city into two districts, the business and the residence district, and to exclude from the latter all structures and all businesses not enumerated as conforming uses and to confine the excluded structures and businesses to the business districts. Consequently, not only must the apparent conflicts be considered in the light of such policy, but wherever necessary such policy should be given effect as against any doubtful expression of intention apparently inconsistent therewith.

The definition of an accessory building abounds with tokens indicative of meaning that an accessory building must be upon the same premises as the one to which it is accessory. While it is customary, perhaps, to expressly provide in zoning ordinances that an accessory building and the one to which it is accessory be upon the same premises (58 Am. Jur., Zoning, §§ 46 and 47), the omission of such a provision here is not decisive that such was not the intention, for the reason that such an intention is otherwise clearly manifested. The words "accessory," "subordinate," "incidental," and "main," when used in connection with buildings, all denote relationship of one building to another. See, Hall v. Union Light, Heat & Power Co. (D. C.) 53 F. Supp. 817, 818. Ordinarily, the word "accessory" when applied to a building denotes that it is used as an adjunct of and in subordination to another building. Kenny v. Building Commr. 315 Mass. 291, 52 N. E. (2d) 683, 150 A. L. R. 490. Accordingly, a private garage is held to be an "accessory building" to a dwelling within the meaning of a zoning ordinance. People v. Scrafano, 307 Mich. 655, 12 N. W. (2d) 325; Howard v. Mahoney, 188 Okl. 89, 106 P. (2d) 267. A thing is "subordinate" when it is ancillary or auxiliary to a principal thing. 40 Wd. & Phr. (Perm. ed.) "Subordinate," p. 415. "Incidental" has much the same meaning as "accessory" and "subordinate" and is used to convey the idea of a thing being subordinate to, dependent on, and pertaining to another thing which is the principal one. The *Robin Goodfellow* (D. C.) 20 F. (2d) 924; 42 C. J. S., "Incidental," pp. 520-521.

See, Village of St. Louis Park v. Casey, 218 Minn. 394, 16 N. W. (2d) 459, 155 A. L. R. 1128. A "main" building is one to which others are accessory or subordinate in use. See, Oregon, C. & E. Ry. Co. v. Blackmer, 154 Or. 388, 59 P. (2d) 694. The word "the" is a definitive and when used before a noun has a specifying and particularizing effect. 41 Wd. & Phr. (Perm. ed.) "The," p. 461. In the phrase "or the use of the premises," the word "the" is used with such meaning. By a building incidental to the use of *the* premises is meant one situated upon the premises to the use of which it is incidental. Plainly, that is what the ordinance here means. Likewise, a building the use of which is "incidental" to a "main" building refers to two buildings used together, and in a zoning ordinance regulating the use of property means that the two buildings are situated upon the same premises. As applied here, the proposed garage was not accessory to the use of any building or premises. It could not be accessory to the dairy company's building in the business district for the reason that the latter is not situated upon the same premises. It could not be incidental to the use of premises on which it was to be located for the reason that the use of such premises for the garage would be the *sole* use thereof. Thus, the use for a garage could not be as an adjunct, or subordinate, or incidental to some other use of the premises, much less a principal one, for the plain reason that there was no other use which could be the principal one. Likewise, use of the proposed garage could not be incidental to a "main" building, for the plain reason that there was no other, much less a *main,* building on the premises.

The word "including" has a variable meaning, depending on the circumstances of its use. Sometimes it is a word of enlargement and at others one of restriction. Sometimes it is used as meaning "also," "as well as," and "for example." It is used sometimes to specify particularly that which belongs to a class already mentioned in more general terms; to add to a class a genus not naturally belonging thereto, and also in an accumulative sense and as classing that which follows with that which has already been mentioned. Illinois Cent. R. Co. v. Franklin County, 387 Ill. 301, 56 N. E. (2d) 775;

State v. Sho-Me Power Cooperative, 354 Mo. 892, 191 S. W. (2d) 971; Red Hook Cold Storage Co. Inc. v. Dept. of Labor, 295 N. Y. 1, 64 N. E. (2d) 265, 163 A. L. R. 439; Application of Central Airlines, Inc. 199 Okl. 300, 185 P. (2d) 919; 42 C. J. S., "Include," pp. 525-527. We think that in the phrase "Accessory Buildings, including one private garage," in § 3 of the ordinance, enumerating conforming uses in the residence district, the word "including" is used in the last-mentioned sense—that is, it is used as meaning that private garages which also are accessory buildings are authorized. Such a meaning is betokened by the ordinance's omission to enumerate "accessory buildings" and "private garages" separately so as to show that each was to be authorized regardless of the other; by grouping them in the phrase mentioned as structures having features in common; and by the express policy of the ordinance. A literal reading and application of the definition of the words "private garage" would emasculate and defeat, in part at least, the principal and paramount policy of the ordinance of keeping business enterprises in the business district and out of the residence district and limiting the use of the latter to those enumerated. Use of the garage in the manner proposed would constitute a violation of the zoning restrictions operative in the residence district. People v. Scrafano, 307 Mich. 655, 12 N. W. (2d) 325, *supra*. In the cited case, it was held that the use of a garage on the premises on which defendant had his dwelling for storing trucks used in connection with his wholesale fruit business located elsewhere constituted a use contrary to the intent and purpose of a zoning ordinance restricting the use of premises in residence districts to one-family dwellings and accessory buildings thereto. A construction here that would permit the use of the premises in question .for the proposed garage should be avoided, for the reason that it would in effect authorize a use which it was the plain intention of the ordinance to prohibit. Accordingly, because the language of the ordinance is reasonably susceptible of a meaning that a private garage may be erected in the residence district *only* when it also is an accessory building and because a construction that the language has such meaning would not only

reconcile and harmonize the several provisions of the ordinance as well as effectuate the policy thereof and the reasons for its enactment, we construe the phrase "Accessory Buildings, including one private garage," to mean that a "private garage" shall be permitted *only* when it also is an "accessory building." Consequently, the erection of the proposed garage would be a violation of the ordinance and unlawful.

■ A building permit issued in violation of a zoning ordinance by an official lacking power to alter or vary the ordinance is void, and the zoning regulation may be enforced nothwithstanding the fact that the permittee may have commenced building operations. Zimmerman v. O'Meara, 215 Iowa 1140, 245 N. W. 715; Annotations, 119 A. L. R. 1516 and 124 A. L. R. 538; 58 Am. Jur., Zoning, § 184. See, 9 Am. Jur., Buildings, § 8. The reason given for the rule by the authorities is that both the granting of a permit and the varying of a zoning restriction involve the exercise of governmental power, which cannot be exercised by an officer upon whom it has not been conferred nor set at naught by the action of a property owner proceeding in defiance thereof. See, Alexander Co. v. City of Owatonna, 222 Minn. 312, 24 N. W. (2d) 244. In Zimmerman v. O'Meara, *supra,* it was held that a private property owner injured by the violation, as here, is entitled to injunctive relief. It follows, therefore, that the permit here was absolutely void and that plaintiff is entitled to an injunction for enforcement of the zoning ordinance restrictions.

Our conclusion is that plaintiff is entitled to the injunction sued for and that the trial court erred in denying him such relief.

Reversed with directions to issue an injunction in accordance with the opinion.