[No. 34235. *En Banc.* January 16, 1958.]

HARRY PEARSON, *Appellant,* v. D. L. EVANS, *as King County Engineer, Defendant,* WILLIAM T. WAGGONER, *Respondent.*[1]

[1]Reported in 320 P. (2d) 300.

*Guttormsen, Scholfield, Willits & Ager,* for appellant.

*William S. Howard,* for respondent.

MALLERY, J.—This is an appeal by the plaintiff from the dismissal of his cross-complaint against the intervener, William T. Waggoner, respondent herein, in which appellant sought to enjoin him from constructing a residence in accordance with a building permit issued by the proper King county authorities, which included an accessory boathouse objectionable to the appellant.

The property, located on Mercer Island in King county, is zoned for single-family residences, which are permitted to have garages, boathouses, or other structures accessory thereto.

The appellant contends that the structure will be a nuisance by reason of violating the spirit of the zoning ordinance. His theory is that the architect's specifications for the structure, upon the basis of which respondent had obtained the building permit, are plans for a boathouse rather than a residence. This is predicated upon the fact that the living quarters will occupy only about one fifth of the total building. Hence, he contends the small residence is accessory to the large boathouse, which is to be completely equipped for the storage and repair of two hydroplanes.

The appellant does not contend that in issuing the permit the King county authorities did not strictly comply with all the regulations pertaining to residences in the zone in question, nor that the plans for the boathouse accommodations violated any of the building regulations. He contends the spirit of the zoning law is violated, because the respondent's purpose is to build a boathouse, and the residence quarters are mere accessories thereto.

The appellant does not contend that respondent will conduct any business activities of any kind in the boathouse, or do anything other than indulge his formidable private hydroplane hobby. He concedes that boathouses can be accessory to residences within the zone in question.

■ The zoning ordinance in question is unambiguous and needs no court interpretation to ascertain its meaning and intent. Zoning ordinances are in derogation of the common law and must be strictly construed. *Morin v. Johnson,* 49 Wn. (2d) 275, 300 P. (2d) 569. The administrative authorities issued the building permit because the plans of the building conform to all pertinent regulations now in effect.

■ If appellant would address his arguments to the zoning commission and the board of county commissioners, he might induce them to exercise their legislative powers and amend the ordinance to limit the size of accessory buildings. The court has no such legislative authority in police power matters. 8 McQuillin Municipal Corporations (3d ed.) 525, § 25.278.

■ We have said in *State ex rel. Ogden v. Bellevue,* 45 Wn. (2d) 492, 275 P. (2d) 899, that

"The discretion permissible in zoning matters is that which is exercised in *adopting* the zone classifications with the terms, standards, and requirements pertinent thereto, all of which must be by general ordinance applicable to all persons alike. The acts of administering a zoning ordinance do not go back to the questions of policy and discretion which were settled at the time of the adoption of the ordinance. Administrative authorities are properly concerned with questions of compliance with the ordinance, not with its wisdom. To subject individuals to questions of policy in administrative matters would be unconstitutional. Art. I, § 12, of the constitution of the state of Washington, provides:

" 'No law shall be passed granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which upon the same terms shall not equally belong to all citizens, or corporations.' "

The appellant has no cause of action.

The dismissal of his cross-complaint is affirmed.

DONWORTH, WEAVER, and ROSELLINI, JJ., concur.

HILL, C. J. (concurring in the result)—I concur in the result of the majority opinion.

The question which has bothered me in this case is whether William T. Waggoner intended the structure with which we are here concerned to be "used only for shelter or storage of . . . boats," which is specifically permitted by § 2.08 of the King county zoning code, or whether it was designed and intended as a base for the maintenance and repair of his unlimited hydroplanes, which use would be a violation of the zoning code.

The dissent argues persuasively that it is

". . . fairly obvious that the structure contemplated by Mr. Waggoner will be used for not only the shelter and storage, but for maintenance work of perhaps varying degree as to one or two large, unlimited type, hydroplane racing boats."

If it is so used, the remedy is obvious; and, until it is so used, it seems to me that Mr. Waggoner is entitled to the benefit of a presumption that he will properly and lawfully use the premises he is constructing.

The plaintiff having proved neither that the plans for the proposed building or its intended use violate the King county zoning code, I agree with the majority that the plaintiff's cause of action should be dismissed.

FINLEY, J. (dissenting)—The operating principle of modern zoning regulations is in some respects the antithesis of the rugged individualism of pioneer, frontier times.

This is particularly true in the sense that the latter principle permitted interference with a person's right to use his land as he saw fit only in clear cases of nuisance or downright community necessity. But conceding that point does not mean that zoning should be judicially suspect, deprecated, and disavowed by the courts as "new-fangled." It *is* relatively new. But it does not necessarily follow that the purposes and the results of modern zoning are to be condemned as undesirable and *ultra vires et contra pacem regis*. The pioneer, frontier, concept of land use was understandable in the context of its time. However, with the changes in the modern world wrought by urbanization and industrialization, the same democratic principles and con-

siderations which then supported that concept of land use now support modern zoning. It certainly merits objective evaluation through judicial understanding and tolerance.

After an examination of numerous cases involving the eradication of nonconforming uses under modern zoning regulations, one writer had this to say:

"One gets, definitely, the impression from some of the cases, that judges get their dander up and fight to protect misfit nonconforming uses which they would eradicate forthwith if there were no zoning." Judicial Zoning Through Recent Nuisance Cases, 1955 Wisconsin L. Rev. 440-457.

If citizens decide, through their normal legislative processes, that they want zoning, the courts should strive to enforce the spirit as well as the clearly defined letter of the ensuing zoning regulations.

The majority opinion expresses the view that the zoning resolution or ordinance here under consideration "is unambiguous and needs no court interpretation to ascertain its meaning and intent." Furthermore, it is said that appellant Pearson's contention is that the spirit of the zoning law would be violated by the issuance of a permit and by the construction of a building as contemplated by respondent Waggoner.

I agree with the majority that the applicable provisions of the zoning ordinance seem to be unambiguous. However, to me, the meaning of the ordinance is directly the opposite of that attributed to it by the majority. Thus it could be that one or perhaps both viewpoints involve *interpretation* of the ordinance.

I do not agree with the majority that appellant Pearson is merely contending that the spirit of the provisions of the zoning ordinance would be violated. I think his contention is that the letter as well as the spirit of the zoning provisions prohibits the construction of the building contemplated by Mr. Waggoner.

The properties of appellant Pearson and of respondent Waggoner are located within an area designated as *R-6 Residential Single-Family District.*

*Section 2.05* of the King county zoning code defines a single-family dwelling unit as follows:

"A building containing but one kitchen, designed and/or used to house not more than one family, including all necessary household employees of such family."

*Section 2.08* of the King county zoning code defines a private garage or boat house as follows:

"An *accessory* building or an *accessory portion* of the *main building* designed and/or used *only for shelter* or *storage* of vehicles, boats, except airplanes, owned or operated by the occupants of the main building." (Italics mine.)

*Section 2.02* of the King county zoning code defines an *accessory use* in the following language:

"A use *customarily incidental and accessory* to the principal use of a lot or a building or other structure located upon the same lot." (Italics mine.)

Paraphrasing the latter code provision, an accessory use is clearly defined as one customarily *incidental and accessory* to the *principal* use of a lot or a building or other structure.

The record in this case shows that the building will have a storage room, eleven by seventeen feet, where spare engines will be kept. There will be two electric hoists, ostensibly for lifting the hydroplanes and for interchanging motors in them. Another nineteen-by-fourteen storage room is available. The testimony is not clear as to whether it will be used to keep spare motor parts and tools. In any event, it should be fairly obvious that the structure contemplated by Mr. Waggoner will be used for not only the shelter and storage, but for maintenance work of perhaps varying degree as to one or two large, unlimited type, hydroplane racing boats. Approximately one fifth of the area, or nine hundred of the forty-two hundred square feet of the structure, will be used for living quarters. The testimony is not clear whether the living quarters will be occupied by Mr. Waggoner or by the crew chief in charge of maintenance work as to the hydroplanes.

Assuming that approximately one fifth of the structure will be occupied by Mr. Waggoner during the summer rac-

ing season, I simply cannot comprehend how the contemplated use of the remaining four fifths of the structure can be said to be *customarily incidental and accessory* to a *single-family dwelling unit.* I believe that by the insertion of the word, *customarily,* the framers of the zoning ordinance were attempting to make certain that the words, *incidental to and accessory to,* should be given their ordinary, everyday meaning. I do not believe the majority opinion complies with that intention. It takes more than the action of one property owner (Mr. Waggoner) to make something customary. If it is the predominant sentiment in Seattle, particularly of property owners in the Lake Washington area, that the lake and land bordering on it may be utilized in a manner to encourage and develop outstanding hydroplane racing, there is certainly nothing wrong in that. But the ordinance should be revised accordingly.

Appellant conceded, in argument, that, if Mr. Waggoner constructed and maintained a dwelling house of the usual variety on his land, no objection could be made under the zoning laws if Waggoner then constructed a boat house for his hydroplanes. But a boat house for shelter, storage, and repair of unlimited racing hydroplanes certainly is not customarily incidental and accessory to a one-family dwelling; and this court is not bound by the interpretation given the ordinance by one property owner, even if he is the plaintiff in this action.

Now, if the contemplated use violates the zoning ordinance, is the injunctive relief he seeks available to the plaintiff?

In *Park v. Stolzheise* (1946), 24 Wn. (2d) 781, 167 P. (2d) 412, this court allowed such relief. In the course of that opinion the court said:

"It is now generally held by the courts in this country that a property owner may pursue the remedy of injunction against the violation of a zoning ordinance, upon a showing of special damages to him by way of diminution in value of his property resulting from the violation of the ordinance. Notes, 129 A. L. R. (1940) 885, where the cases are collected."

This principle was accepted in *Desimone v. Seattle* (1950), 35 Wn. (2d) 579, 213 P. (2d) 948, in which case the court held that the adjacent landowner had failed to establish any special damage to his property.

For the availability of injunctive relief by adjoining property owners in other jurisdictions see: *Meyer v. Seifert* (1949), 216 Ark. 293, 225 S. W. (2d) 4; *Hopkins v. MacCulloch* (1939), 35 Cal. App. (2d) 442, 95 P. (2d) 950; *Zimmerman v. O'Meara* (1932), 215 Iowa 1140, 245 N. W. 715; *Lowry v. City of Mankato* (1950), 231 Minn. 108, 42 N. W. (2d) 553; *Taylor v. Schlemmer* (1944), 353 Mo. 687, 183 S. W. (2d) 913; *Momeier v. John McAlister, Inc.* (1943), 203 S. C. 353, 27 S. E. (2d) 504; *Graves v. Johnson* (1954), 75 S. D. 261, 63 N. W. (2d) 341; *Bouchard v. Zetley* (1928), 196 Wis. 635, 220 N. W. 209; and see, also, McQuillin, Municipal Corporations (3d ed.), § 25.351. I do not think we have to postpone closing the barn door until after the horse has escaped.

In connection with the matter of injunctive relief in this case, it is significant that the zoning ordinance itself provides for preventive action; *i. e.*, enjoinment of construction in violation of the code, through action by the prosecuting attorney. Accordingly, the appellant had available the alternative course of seeking a writ of mandamus requiring the prosecuting attorney to bring the action for injunction. McQuillin, Municipal Corporations (3d. ed.), § 25.351. If he had followed such course, the plaintiff would not have been required to show special damages to his property, as the ordinance itself declares use of property contrary to the zoning regulations to be unlawful and a public nuisance.

I believe the judgment should be reversed, and the cause remanded for further and appropriate proceedings.

OTT and FOSTER, JJ., concur with FINLEY, J.